UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSEMARY M., | ) | Case No. ED CV 17-70-SP |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) | |

## I.

## INTRODUCTION

On January 13, 2017, plaintiff Rosemary M. filed a complaint against defendant, Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). Both parties have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision: whether the Administrative Law Judge ("ALJ") failed to properly consider an examining physician's opinion.

Memorandum in Support of the Plaintiff's Complaint ("P. Mem.") at 5-9; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied the parties' written submissions, the decision of the ALJ, and the Administrative Record ("AR"), the court concludes that, as detailed herein, the ALJ erred in rejecting the examining physician's opinion. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions set forth below.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was twenty-eight years old on her alleged disability onset date, completed some of twelfth grade but did not graduate from high school. AR at 167, 185. She has no past relevant work. *Id.* at 33, 184.

On January 17, 2013, plaintiff filed a Title XVI application for SSI. *Id.* at 157, 196. Plaintiff alleged she has been disabled since September 1, 1997 due to fibromyalgia, an ovarian cyst, and mental disabilities. *Id.* at 101, 157. The Commissioner denied plaintiff's application, after which plaintiff filed a request for reconsideration, which was denied. *Id.* at 101, 109. Plaintiff then filed a request for a hearing. *Id.* at 116.

On June 25, 2015, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 42-67. At the hearing, the ALJ also heard testimony from Heidi Paul, a vocational expert ("VE"). *Id.* at 65-66. On August 5, 2015, the ALJ denied plaintiff's claim for benefits. *Id.* at 25-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since January 17, 2013, the application date. *Id.* at 27.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease ("DDD") of the spine, fibromyalgia, diarrhea, bipolar disorder, and posttraumatic stress disorder ("PTSD"). *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal the severity of one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings").[1] *Id.* at 28.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that plaintiff had the RFC to perform less than the full range of medium work as defined by 20 C.F.R. § 416.967(b). *Id.* at 29. Specifically, plaintiff could lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; could sit for six hours out of an eight-hour workday; could stand and/or walk for six hours out of an eight-hour workday; could not climb ladders, ropes or scaffolds; had to avoid concentrated exposure to pulmonary or respiratory irritants; required ready access to a restroom; was limited to simple repetitive tasks where job duties did not change on a day to day basis; and was limited to superficial interaction with coworkers and no public contact. *Id.*

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at 33.

---

[1] The Social Security Administration issued new regulations effective March 27, 2017. Unless otherwise stated, all regulations cited in this decision are to those effective for cases filed prior to March 27, 2017.

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that plaintiff could perform. *Id.* at 34.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-7, 17-19.

The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# DISCUSSION

Plaintiff argues the ALJ failed to properly consider the opinion of Dr. Jarvis Ngati, an examining physician. P. Mem. at 5-9. Specifically, she contends the ALJ failed to provide a specific and legitimate reason to reject the opinion.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.[3] 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other

---

[3] Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. § 404.1513(a)(2). Accordingly, for ease of reference, the court will refer to all psychologists as physicians.

5

opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

**Medical Opinions**

Plaintiff was treated at the Inland Behavioral and Health Services on March 8, March 25, and April 12, 2013. AR at 306. Sean Gibbs, a psychology intern, diagnosed plaintiff with posttraumatic stress disorder. *Id.* at 305, 307, 308. His treatment notes and diagnosis were also signed by Dr. Christine Bierdrager-Salley, a psychologist. *Id.* Gibbs also diagnosed plaintiff with a Global Assessment of Functioning ("GAF") score of 43. *Id.* A GAF score of 41-50 is indicative of "serious symptoms," such as suicidal ideation, severe obsessional rituals, or frequent shoplifting, or any serious impairment in social, occupational, or school functioning, such as a lack of friends or an inability to maintain employment. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994) ("DSM-IV") (describing the GAF scale designed to provide psychiatrists a method of scoring and comparing patients functional capacity in light of diagnoses).

Dr. Jarvis Ngati, a forensic psychiatrist, examined plaintiff on June 1, 2013. AR at 339. Dr. Ngati diagnosed plaintiff with bipolar disorder. *Id.* at 342. He also opined the following: plaintiff's ability to perform simple and repetitive tasks was mildly to moderately limited; her ability to perform detailed and complex tasks was moderately to markedly limited; her ability to relate and interact with coworkers and the public was markedly limited; her ability to accept instructions from

supervisors was moderately limited; her ability to maintain concentration, attention, persistence, and pace was moderately limited; her ability to perform activities without special or additional supervision was markedly limited; and her ability to deal with the usual stressors encountered in the workplace, maintain regular attendance, and complete a normal workday or workweek was markedly limited. *Id.*

The state agency physicians diagnosed plaintiff with severe affective disorder. *Id.* at 75, 91. They also opined she would have moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. *Id.* at 76, 91. In contrast to Dr. Ngati's opinion, the state agency physicians found plaintiff was only moderately limited in her ability to interact appropriately with the public and to get along with coworkers; not significantly limited in her ability to sustain a routine without special supervision; and not significantly limited in her ability to maintain regular attendance. *Id.* at 80, 96. Phaedra Caruso-Radin, a psychologist, also noted she believed a consultative examination should be scheduled for plaintiff because plaintiff appeared to have mental impairments. *Id.* at 75. She noted plaintiff was very talkative and unfocused, and gave many unnecessary details when answering questions. *Id.* But she opined overall that plaintiff could complete simple tasks in an NPC environment. *Id.* Another state psychologist, Dr. Lief Leaf, also diagnosed plaintiff with bipolar disorder and a GAF score of 50. *Id.* at 92. But he also opined the data indicated plaintiff could complete simple tasks in an NPC environment.[4] *Id.*

---

[4] Neither agency psychologist defined NPC; the court assumes it means no public contact.

7

**The ALJ's Findings**

Relying on the treatment records, objective medical evidence, and medical and non-medical opinions with respect to mental limitations, the ALJ determined plaintiff was limited to simple repetitive tasks where job duties do not change on a day to day basis; and was limited to superficial interaction with coworkers and no public contact. *Id.* at 29.

In reaching his RFC determination, the ALJ discussed all of the medical history and gave little weight to the opinions of Sean Gibbs and Dr. Ngati. *Id.* at 33. Although somewhat unclear, the ALJ also states he gave great weight to the state agency consultants' opined medium physical limitations, but gave little weight to the psychological moderate limitations they opined. *Id.* at 32-33. The ALJ stated he gave very little weight to Dr. Ngati's opinion because: (1) it was inconsistent with the normal objective findings in the record as a whole; and (2) plaintiff was able to follow the conversation and questions adequately and remembered treatment history accurately at the hearing. *Id.*

Because the opinion of Dr. Ngati, an examining physician, was contradicted in part by the opinions of the state agency physicians, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Ngati's opinion. The ALJ's first reason for rejecting Dr. Ngati's opinion was that it was inconsistent with the record as a whole. *Id.* at 33. Defendant argues that since the record as a whole included the ALJ's unchallenged discounting of plaintiff's credibility, and since plaintiff's self-reporting was part of the basis for Dr. Ngati's opinion, the ALJ therefore properly gave very little weight to Dr. Ngati's opinion. D. Mem. at 3-7. But there is no indication in the ALJ's decision that his adverse credibility finding had anything to do with his rejection of Dr. Ngati's opinion.

If the ALJ actually said nothing more than that the opinion was inconsistent with the record as a whole, such reason would be insufficient on its face. *See*

*Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.") (citation omitted). The ALJ here in fact states Dr. Ngati's opinion was "inconsistent with the record as a whole, which show[s] normal objective findings." AR at 33. This makes it clear the ALJ was not rejecting Dr. Ngati's opinion because it was based on plaintiff's discredited allegations; however, the ALJ's bald assertion that Dr. Ngati's opinion was inconsistent with the normal objective findings in the record as a whole is still inadequate.

"To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Here, the ALJ gave an abbreviated and incomplete account of certain mental impairment findings, but failed to specify the normal objective findings he found inconsistent with Dr. Ngati's opinion. *See* AR at 32-33. Among the evidence the ALJ disregarded was the state agency psychologists' diagnosis that plaintiff's GAF score was 50. As noted above, a GAF score in the range of 41-50 is indicative of serious symptoms. Dr. Ngati's opinion that plaintiff would have moderate to marked limitation in various work-related tasks was consistent with at least some of the objective medical evidence. Thus, not only was the first reason given by the ALJ insufficiently specific, it also was not supported by substantial evidence.

The ALJ's second reason for rejecting Dr. Ngati's opinion was that plaintiff was able to follow the conversation and questions adequately and remembered her treatment history accurately at the hearing. By itself, this is a dubious reason to

reject a physician's opinion. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (an "ALJ's reliance on his personal observations . . . at the hearing has been condemned as 'sit and squirm' jurisprudence," particularly where there is objective evidence to the contrary). Moreover, this reason also was unsupported by the record.

Plaintiff's answers at the hearing frequently wandered from the questions that were directed to her. When the ALJ asked if she received treatment for her knee, plaintiff answered with irrelevant details about treatment for her neck and back. AR at 44. When the ALJ asked how often plaintiff had to run to the bathroom because of her bowel movements, she answered with details about her weight and stomach. *Id.* at 52. When the ALJ asked how long it took her to lose thirty pounds, she answered with details about her son's illness. *Id.* When plaintiff's attorney asked what symptoms plaintiff had in her back, plaintiff answered with details about her doctor's diagnosis for her neck. *Id.* at 57-58. Although plaintiff may have been able to follow the conversation and remember her treatment history, she provided unnecessary details and strayed from the call of questions, failing to answer some adequately. This is consistent with Dr. Ngati's opinion that, inter alia, her ability to perform detailed and complex tasks was moderately to markedly limited and her ability to accept instructions from supervisors was moderately limited because of her need to be redirected often during the evaluation. *Id.* at 342.

Accordingly, neither reason the ALJ gave for giving Dr. Ngati's opinion little weight was specific and legitimate and supported by substantial evidence. As such, the ALJ erred in rejecting Dr. Ngati's opinion. Since the ALJ did not incorporate many of Dr. Ngati's opined limitations into his RFC determination – including plaintiff's need for special supervision and markedly limited ability to maintain regular attendance – the court cannot say this error was harmless. Therefore, the ALJ's error in rejecting Dr. Ngati's opinion requires reversal.

# V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve outstanding issues. On remand, the ALJ shall reconsider Dr. Ngati's opinion and either credit it or provide legally sufficient reasons supported by substantial evidence for rejecting it. The ALJ shall then proceed through steps three, four, and five to determine what work, if any, plaintiff was capable of performing.

//
//

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 29, 2018

_____
SHERI PYM
United States Magistrate Judge